FILED

DEC 1 8 2012

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                         DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK MOSS, individually and on behalf of the Mark S. and Ellen R. Moss Family Trust and the Mark S. & Ellen R. Moss Charitable Remainder Unitrust,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLES J. MCLUCAS, et al.,<br><br>Defendants. | CASE NO. 12-CV-2368 BEN (KSC)<br><br>ORDER DENYING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND REQUEST TO CONDUCT LIMITED EXPEDITED DISCOVERY<br><br>[Docket No. 23] |

Presently before the Court is Plaintiff's Ex Parte Application for Temporary Restraining Order and Limited Expedited Discovery Related Thereto. (Docket No. 23.) For the reasons stated below, the Ex Parte Application is **DENIED**.

## BACKGROUND

Plaintiff Mark Moss allegedly invested more than $1 million of his retirement funds in a general investment with Kingsway Sales and Marketing, LLC and its successor, Kingsway Industries, Inc. (collectively, "Kingsway") based on the advice and counsel of Defendant Charles McLucas, Plaintiff's long-time investment advisor and certified public accountant. (Compl. ¶¶ 16-19; Moss Decl. ¶ 5.) Plaintiff alleges that McLucas used his position of trust and confidence with Plaintiff to assure him that his investments in Kingsway were "lucrative," "safe," and "guaranteed." (Compl.

¶¶ 16-18; Moss Decl. ¶ 5.)

McLucas allegedly knew that Defendant David Mahrt, the owner of Kingsway, and his family were using large amounts of Kingsway's working funds for personal use as well as seeking loans from new investors to pay off previous investors and pay personal expenses. (Compl. ¶¶ 31-32; Moss Decl. ¶ 7.) Plaintiff alleges that McLucas wrongfully received Plaintiff's investment funds. (Compl. ¶ 32; Moss Decl. ¶ 7.)

On September 28, 2012, Plaintiff initiated the present action. The complaint asserts nine claims: (1) securities fraud pursuant to 15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5 against McLucas and Mahrt; (2) common law fraud and deceit against McLucas and Mahrt; (3) breach of fiduciary duty against McLucas and Yosemite Capital Management; (4) professional negligence against McLucas and Yosemite Capital Management; (5) constructive fraud against McLucas and Yosemite Capital Management; (6) constructive trust against Yosemite Capital Management and Charitable Trust Administrators, Inc.; (7) conversion against McLucas and Mahrt; (8) violation of California Welfare & Institutions Code §§ 15600 *et seq.* against McLucas; and (9) violation of Business and Professions Code §§ 17200 *et seq.* against Mahrt and McLucas.

McLucas is the president of Defendant Charitable Trust Administrators, Inc. ("CTAI"). (McLucas Decl. ¶ 2.) From 2003 to September 2012, McLucas owned a 50% ownership interest in CTAI, and currently, McLucas owns a 100% ownership interest in CTAI. (*Id.* ¶¶ 2, 14.) On November 19, 2012, Plaintiff received a bulk email from CTAI—the September 2012 Charitable Times Quarterly Newsletter. (Moss Decl. ¶ 10.) An article titled "Firm Announcement: Introducing Renaissance Administration," written by McLucas, stated that CTAI was transferring all of its charitable trust administration services to a third party, Renaissance Administration, LLC. (*Id.*, Exh. 3.) Plaintiff alleges that he "heard from other people who know McLucas that he sold his charitable trust administration business to Renaissance." (*Id.* ¶ 10.) Plaintiff alleges that subsequent investigation confirmed that McLucas sold CTAI to Renaissance. (Wisdom Decl. ¶ 3; Wypychowski Decl. ¶ 3.) According to Plaintiff, "[t]he timing of the sale of CTAI is suspicious, and it appears that McLucas and CTAI are currently liquidating assets in order to avoid recovery by Dr. Moss." (Ex Parte Appl. at 3.)

1    Presently before the Court is Plaintiff's Ex Parte Application for Temporary Restraining Order
2    and Limited Expedited Discovery Related Thereto. Plaintiff seeks a temporary restraining order
3    enjoining McLucas and CTAI from directly or indirectly transferring, liquidating, encumbering,
4    pledging, assigning, or otherwise disposing of any and all proceeds from the sale of CTAI to
5    Renaissance.

## DISCUSSION

### I.  TEMPORARY RESTRAINING ORDER

To obtain a temporary restraining order ("TRO"), a plaintiff must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). An injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 21. The determination whether to grant an injunction is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks omitted).

Plaintiff's request for a TRO is based on the premise that "[t]he timing of the sale of CTAI is suspicious, and it appears that McLucas and CTAI are currently liquidating assets in order to avoid recovery by Dr. Moss." (Ex Parte Appl. at 3.) According to Plaintiff, CTAI is no longer conducting business because it has been completely sold to Renaissance. (*See id.* at 7.)

Plaintiff, however, has not met his burden in establishing that McLucas and CTAI are liquidating assets to avoid recovery by Plaintiff. First, there is evidence that CTAI was not sold in its entirety and that it is still conducting business. McLucas testified that on September 20, 2012, "I sold only the internal tax preparation and trust administration components of CTAI to Renaissance Administration, LLC . . . , but NOT the company itself." (McLucas Decl. ¶ 13.) "CTAI was and remains a viable business entity that has not been sold to any third party." (*Id.* ¶ 4.) The Charitable Times Quarterly Newsletter, which Plaintiff alleges alerted him to the sale of CTAI, confirms this. The Newsletter states:

> I [McLucas] am excited to announce some big changes in our firm that will be effective

> October 1, 2012. At that time, we will be transferring all of our *charitable trust administration services* to Renaissance Administration, LLC. For our clients, you will continue to receive the same high level of services that you have come to expect through CTAI, at the same fee, with additional resources and service capabilities that Renaissance offers.

(Moss Decl., Exh. 3 (emphasis added).) The Newsletter is consistent with McLucas' testimony, in that it confirms that only the charitable trust administration services were sold to Renaissance and that CTAI remains a viable business entity. Although Plaintiff argues that he heard from other individuals who know McLucas that McLucas sold CTAI (*id.* ¶ 10), the more reliable evidence indicates that CTAI was not sold in its entirety and is continuing its business operations.

Second, there is evidence that McLucas still owns an interest in CTAI. McLucas testified, "[w]ith 50% of the proceeds from the Sale, I actually purchased back the other 50% ownership interest in CTAI that had previously belonged to HMWC partners. Not only did I not sell CTAI, but I now own ALL of it." (McLucas Decl. ¶ 14.) This testimony is confirmed by the Newsletter, which emphasizes McLucas' continued role in CTAI:

> As for my continued role [after the sale], I will be available for face-to-face meetings with charities and individuals to review proposals and answer questions when establishing a charitable trust. For the past 17 years, my heart and passion for CTAI has been to provide individuals and smaller non-profit organizations, churches and fellow professionals with technical expertise and state-of-the-art illustrations and proposals, in order to assist in establishing charitable trusts and other forms of planned gifts. Transferring my administrative duties and responsibilities to Renaissance will free my time to focus on those activities. Through my new association with Renaissance, I will train and educate professionals and charities in new planned gifts assisted by a strong team of highly professional industry experts.

(Moss Decl., Exh. 3.) Although Plaintiff disputes this, the more reliable evidence indicates that McLucas still owns an interest in CTAI.

Plaintiff has not met his burden in establishing that McLucas and CTAI are liquidating assets to avoid recovery by Plaintiff. As this issue is dispositive, the parties' remaining arguments need not be addressed. Plaintiff's request for a temporary restraining order is **DENIED**.

II. **REQUEST FOR LIMITED EXPEDITED DISCOVERY**

A court may authorize expedited discovery where an applicant demonstrates good cause. *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275 (N.D. Cal. 2002). Good cause exists

1  "where the need for expedited discovery, in consideration of the administration of justice, outweighs
2  the prejudice to the responding party." *Id.* at 276.
3      Because Plaintiff has not met his burden for the issuance of a temporary restraining order, his
4  request for limited expedited discovery is **DENIED**.

### CONCLUSION

6      For the foregoing reasons, Plaintiff's Ex Parte Application for Temporary Restraining Order
7  and Limited Expedited Discovery Related Thereto is **DENIED**.

8  **IT IS SO ORDERED.**

10  DATED: December __, 2012

                                    HON. ROGER T. BENITEZ
                                    United States District Court Judge