

2013 APR 16  AM 10: 56

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9               **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 MARK MOSS, individually and on behalf of the Mark S. and Ellen R. Moss Family Trust and the Mark S. & Ellen R. Moss Charitable Remainder Unitrust,<br><br>Plaintiff,<br><br>vs.<br><br><br>CHARLES J. MCLUCAS, et al.,<br><br>Defendants. | CASE NO. 12-CV-2368 BEN (KSC)<br><br>**ORDER:**<br><br>**(1) GRANTING YOSEMITE CAPITAL MANAGEMENT, LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS, OR IN THE ALTERNATIVE, DISMISS MOSS'S CLAIMS**<br>[Docket No. 12]<br><br>**(2) GRANTING CHARLES J. MCLUCAS' AND CHARITABLE TRUST ADMINISTRATORS, INC.'S MOTION TO COMPEL ARBITRATION AND TO JOIN YOSEMITE CAPITAL MANAGEMENT, LLC'S MOTION TO COMPEL ARBITRATION IN FURTHER SUPPORT OF THIS MOTION OR ALTERNATIVELY, FOR STAY OF PROCEEDINGS**<br>[Docket No. 13] |

        Presently before the Court is Defendant Yosemite Capital Management, LLC's

Motion to Compel Arbitration and Stay Proceedings, or in the Alternative, Dismiss

Moss's Claims (Docket No. 12), and Defendants Charles J. McLucas' and Charitable

Trust Administrators, Inc.'s Motion to Compel Arbitration and to Join Yosemite

1  Capital Management, LLC's Motion to Compel Arbitration in Further Support of this

2  Motion or Alternatively, for Stay of Proceedings (Docket No. 13).  For the reasons

3  stated below, both Motions are **GRANTED**.

**BACKGROUND**

5        In 2001, Plaintiff Mark Moss retained Defendant Charles McLucas as his

6  personal investment advisor and CPA, as well as his CPA and bookkeeper for his

7  businesses comprised of various local publications.  (Moss Decl. ¶ 2.)  Moss

8  transferred all of his portfolio accounts to Halbert Halgrove, the investment

9  management company at which McLucas worked at the time. (*Id.*)

10        In 2003, McLucas left Halbert Halgrove and joined Defendant Yosemite Capital

11  Management, LLC as a Senior Investment Counselor. (*Id.* ¶ 3.) Moss transferred his

12  Individual Retirement Account, his Charitable Remainder UniTrust, and the Moss

13  Family Trust Account to Yosemite Capital Management, and continued to receive

14  financial advisement services from McLucas. (*Id.*)  The Investment Management

15  Agreement,  signed by Dr. Mark Moss, Mrs. Ellen Moss, and Mr. Paul Heckler on

16  behalf of Yosemite Capital Management and dated June 30, 2005, describes the rights

17  and duties among Yosemite Capital Management and the Mosses. (*Id.*, Exh. A.)

18        In 2006, the Mosses moved their accounts from Yosemite Capital Management

19  to The Northern Trust Company. (*Id.* ¶ 6.) On April 12, 2006, Moss provided written

20  notice to Yosemite Capital Management that he was moving his accounts to Northern

21  Trust. (*Id.* ¶ 6, Exh. D.)  In May 2006, Northern Trust arranged to have all the assets

22  in the Yosemite Capital Management accounts transferred to Northern Trust. (*Id.* ¶ 7.)

23        After switching to Northern Trust, Moss still used McLucas' CPA services for

24  his personal taxes, as well as for the trusts and publications' tax preparation. (*Id.* ¶ 8.)

25  In addition, McLucas advised the Mosses on financing their tax payments. (*Id.*)

26        In 2007, McLucas approached Moss with an investment opportunity in

27  Kingsway Sales and Marketing, LLC, a company for which McLucas was the Chief

28  Financial Officer and CPA. (*Id.* ¶ 9.) Moss allegedly invested more than $1 million

1    of his retirement funds in a general investment with Kingsway Sales and Marketing,

2    LLC and its successor, Kingsway Industries, Inc. (collectively, "Kingsway") based on

3    the advice and counsel of McLucas. (Compl. ¶¶ 16-19.) Plaintiff alleges that McLucas

4    used his position of trust and confidence with Plaintiff to assure him that his

5    investments in Kingsway were "lucrative," "safe," and "guaranteed." (*Id.* ¶¶ 16-18.)

6    McLucas allegedly knew that Defendant David Mahrt, the owner of Kingsway, and his

7    family were using large amounts of Kingsway's working funds for personal use as well

8    as seeking loans from new investors to pay off previous investors and pay personal

9    expenses. (*Id.* ¶¶ 31-32.) Plaintiff alleges that McLucas wrongfully received

10    Plaintiff's investment funds. (*Id.* ¶ 32.)

11        On September 28, 2012, Plaintiff initiated the present action against McLucas,

12    David Mahrt, Yosemite Capital Management, and Charitable Trust Administrators, Inc.

13    The Complaint asserts nine claims: (1) securities fraud pursuant to 15 U.S.C. § 78j and

14    17 C.F.R. § 240.10b-5 against McLucas and Mahrt; (2) common law fraud and deceit

15    against McLucas and Mahrt; (3) breach of fiduciary duty against McLucas and

16    Yosemite Capital Management; (4) professional negligence against McLucas and

17    Yosemite Capital Management; (5) constructive fraud against McLucas and Yosemite

18    Capital Management; (6) constructive trust against Yosemite Capital Management and

19    Charitable Trust Administrators, Inc.; (7) conversion against McLucas and Mahrt; (8)

20    violation of California Welfare & Institutions Code §§ 15600 *et seq.* against McLucas;

21    and (9) violation of Business and Professions Code §§ 17200 *et seq.* against Mahrt and

22    McLucas. The allegations in the Complaint concern Plaintiff's investments in

23    Kingsway.

24        Presently before the Court is Yosemite Capital Management's Motion to Compel

25    Arbitration and Stay Proceedings, or in the Alternative, Dismiss Moss's Claims

26    (Docket No. 12), and McLucas' and Charitable Trust Administrators' Motion to

27    Compel Arbitration and to Join Yosemite Capital Management's Motion to Compel

28    Arbitration in Further Support of this Motion or Alternatively, for Stay of Proceedings

1 | (Docket No. 13).

2 | **DISCUSSION**

3 | **I.  INVESTMENT MANAGEMENT AGREEMENT**

4 | The Court will first determine whether Defendants may compel arbitration under

5 | the Investment Management Agreement that the Mosses and Yosemite Capital

6 | Management entered into on June 30, 2005.

7 | "Unless the parties clearly and unmistakably provide otherwise, the question of

8 | whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."

9 | *AT & T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986).  In other

10 | words, "even the issue of arbitrability may be submitted to binding arbitration if there

11 | has been a clear demonstration that the parties contemplated it."  *Agere Sys., Inc. v.*

12 | *Samsung Elecs. Co. Ltd.*, 560 F.3d 337, 339 (5th Cir. 2009) (internal alteration and

13 | quotation marks omitted); *accord Dream Theater, Inc. v. Dream Theater*, 124 Cal.

14 | App. 4th 547, 552 (2d Dist. 2004) (where the parties have contractually agreed that the

15 | issue of arbitrability is delegated to the arbitrator, the issues of arbitrability is left to the

16 | arbitrator).

17 | Here, the Investment Management Agreement states:

18 |
19 | The parties waive their right to seek remedies in court, including any right to a jury trial.  The parties agree that any dispute between or among any of the parties arising out of, relating to or in connection with this

20 | Agreement or the Account, shall be resolved exclusively through *binding arbitration conducted under the auspices of JAMS pursuant to its*

21 | *arbitration Rules and Procedures.*

22 | (Heckler Decl., Exh. A [Investment Management Agreement ¶ 18] (emphasis added).)

23 |
24 | The JAMS Comprehensive Arbitration Rules and Procedures provide:

25 | Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement

26 | under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.  The

27 | Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

28 |

12-CV-2368

1  (Roppo Decl., Exh. D [JAMS Comprehensive Arbitration Rules and Procedures, Rule
2  11(c)].)

3      Incorporation into an agreement of a set of arbitration rules which provide for
4  the arbitrator to determine the question of arbitrability "clearly and unmistakably"
5  indicate the parties' agreement that the arbitrator, not the court, is to determine
6  arbitrability. *Shaw Grp., Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 122 (2d Cir.
7  2003); *see also Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir.
8  2005) (holding incorporation of American Arbitration Association rules clearly and
9  unmistakably evidenced intent for arbitrator to decide the issue of arbitrability);
10 *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1372-73 (Fed. Cir. 2006) (same).

11      Here, the Investment Management Agreement incorporates the JAMS
12 Comprehensive Arbitration Rules and Procedures.  The JAMS Comprehensive
13 Arbitration Rules and Procedures, in turn, provide for the arbitrator to determine the
14 question of arbitrability. Accordingly, the parties "clearly and unmistakably" indicate
15 their agreement that the arbitrator is to determine arbitrability.

16      Plaintiff argues that the agreement to arbitrate terminated a year before any of
17 the events which form the basis of the complaint occurred.  According to Plaintiff,
18 Moss terminated his relationship with Yosemite Capital Management in 2006. A year
19 later, Plaintiff argues, a new relationship was formed between McLucas, Yosemite
20 Capital Management, and Moss, to which the Investment Management Agreement no
21 longer applied.  As set forth in JAMS Rule 11(c), however, issues of formation,
22 existence, validity, interpretation, and scope of the arbitration agreement are to be
23 determined by the arbitrator, not the court.  The issue Plaintiff raises goes to the issue
24 of arbitrability. *See Agere Sys.*, 560 F.3d at 340 (holding that the question of whether
25 an agreement to arbitrate had expired was an issue of arbitrability left for the arbitrator
26 where the parties clearly contemplated for the arbitrator to decide the issue of
27 arbitrability).  Defendants may compel arbitration under the Investment Management
28 Agreement.

12-CV-2368

## II.  INDIVIDUAL DEFENDANTS

The Court has determined that the Investment Management Agreement "clearly and unmistakably" indicates the parties' agreement that the arbitrator is to determine arbitrability. Now the Court must determine which individual defendants may compel arbitration under the Investment Management Agreement.  The Court will address each Defendant in turn.

### A.  Yosemite Capital Management

The Investment Management Agreement was signed by Dr. Mark Moss, Mrs. Ellen Moss, and Mr. Paul Heckler on behalf of Yosemite Capital Management. (Moss Decl., Exh. A, at 5.)  Because Yosemite Capital Management is a party to the Investment Management Agreement, it may compel arbitration against Plaintiff. Yosemite Capital Management's motion to compel arbitration is **GRANTED**.

### B.  Charles McLucas

McLucas did not sign the Investment Management Agreement, but he is an employee of Yosemite Capital Management, which is a signatory of the Investment Management Agreement.  An employee may compel arbitration based on an arbitration agreement entered into by his employer. *Harris v. Superior Court*, 188 Cal. App. 3d 475, 478 (2d Dist. 1986).  Accordingly, McLucas may compel arbitration against Moss as a non-signatory beneficiary of the Investment Management Agreement. *See Dryer v. L.A. Rams*, 40 Cal. 3d 406, 418 (1985).  McLucas' motion to compel arbitration is **GRANTED**.

### C.  Charitable Trust Administrators

Charitable Trust Administrators is not a signatory to the Investment Management Agreement.  Nonetheless, Charitable Trust Administrators seeks to join Yosemite Capital Management's Motion to Compel Arbitration on the basis that Moss's claims against Charitable Trust Administrators are founded upon an identical set of facts as those alleged against McLucas.  Alternatively, Charitable Trust Administrators seeks to stay the action against Charitable Trust Administrators

1   pending the outcome of an arbitration proceeding.

2       Charitable Trust Administrators does not cite any authority for the proposition

3   that it should be allowed to compel arbitration against Moss because Moss's claims

4   against Charitable Trust Administrators are founded upon an identical set of facts as

5   those alleged against McLucas. Accordingly, Charitable Trust Administrators' motion

6   to compel arbitration is **DENIED**.

7           **D.    David Mahrt**

8       Mahrt is not a signatory to the Investment Management Agreement. Defendant

9   argues that because Plaintiff alleged that Mahrt and McLucas "formed a conspiracy

10  to do all the wrongful acts alleged in this Complaint" and that they had "knowledge

11  of, and agreed to, all courses of action alleged herein" (Compl. ¶ 12), Mahrt has a right

12  to enforce the arbitration agreement against Moss as an alleged agent of McLucas.

13      "[W]hen a plaintiff alleges a defendant acted as an agent of a party to an

14  arbitration agreement, the defendant may enforce the agreement even though

15  defendant is not a party thereto." *Thomas v. Westlake*, 204 Cal. App. 4th 605, 614 (4th

16  Dist. 2012). Plaintiff, however, does not allege that Mahrt is an agent of McLucas.

17  Rather, Plaintiff alleges that Mahrt and McLucas "formed a conspiracy." Defendant

18  has not cited any authority holding that a third party may compel arbitration when it

19  has been alleged to be a co-conspirator with a signatory to an agreement to arbitrate.

20  Accordingly, Defendant's motion to compel arbitration as to Mahrt is **DENIED**.

21          **III.    CALIFORNIA CODE OF CIVIL PROCEDURE § 1281.2**

22      The Court has determined that Yosemite Capital Management and McLucas

23  may compel arbitration against Moss. However, Charitable Trust Administrators and

24  Mahrt may not compel arbitration. Plaintiff argues that because only some of the

25  defendants may compel arbitration, the Court should decline to enforce the arbitration

26  agreement under California Code of Civil Procedure § 1281.2(c)(1).

27      California Code of Civil Procedure § 1281.2 provides, "On petition of a party

28  to an arbitration agreement alleging the existence of a written agreement to arbitrate

1   a controversy and that a party thereto refuses to arbitrate such controversy, the court

2   shall order the petitioner and the respondent to arbitrate the controversy if it

3   determines that an agreement to arbitrate the controversy exists." However, if the

4   court determines that "[a] party to the arbitration agreement is also a party to a pending

5   court action or special proceeding with a third party, arising out of the same

6   transaction or series of related transactions and there is a possibility of conflicting

7   rulings on a common issue of law or fact," the court may

> (1) may refuse to enforce the arbitration agreement and may order
> intervention or joinder of all parties in a single action or special
> proceeding; (2) may order intervention or joinder as to all or only certain
> issues; (3) may order arbitration among the parties who have agreed to
> arbitration and stay the pending court action or special proceeding
> pending the outcome of the arbitration proceeding; or (4) may stay
> arbitration pending the outcome of the court action or special proceeding.

13   CAL. CODE CIV. P. § 1281.2(c).

14       Here, because this action arises out of a series of transactions that involves both

15   signatories and non-signatories to the arbitration agreement, there is a possibility of

16   conflicting rulings on common issues of law or fact.  To avoid any conflicting rulings,

17   the Court will exercise its discretion to **STAY** the action as to Charitable Trust

18   Administrators and Mahrt while the arbitration involving Moss, Yosemite Capital

19   Management, and McLucas proceeds. *See Cronus Invs., Inc. v. Concierge Servs.*, 35

20   Cal. 4th 376, 393 (2005).

## CONCLUSION

22       For the foregoing reasons, Yosemite Capital Management's Motion to Compel

23   Arbitration and Stay Proceedings, or in the Alternative, Dismiss Moss's Claims is

24   **GRANTED**, and McLucas' and Charitable Trust Administrators' Motion to Compel

25   Arbitration and to Join Yosemite Capital Management's Motion to Compel Arbitration

26   in Further Support of this Motion or Alternatively, for Stay of Proceedings is

27   **GRANTED**.  Yosemite Capital Management, McLucas, and Moss are **ORDERED**

28   to proceed immediately to arbitration. The Court shall retain jurisdiction to enforce

1   any award.  This action is **STAYED** as to Charitable Trust Administrators and Mahrt

2   pending arbitration.

3         **IT IS SO ORDERED.**

4

5   DATED: April ⁄5, 2013

6                                                    HON. ROGER T. BENITEZ
                                                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28